See further, Van Cleaf *v.* Burns, 118 N. Y. 549; Schiffer *v.* Pruden, 64 Id. 47; Reynolds *v.* Reynolds, 24 Wend. 193; Cooper *v.* Whitney, 3 Hill, 95; Pitts *v.* Pitts, 52 N. Y. 593; Wait *v.* Wait, 4 Id. 95; Forrest *v.* Forrest, 6 Duer, 102; Kade *v.* Lauber, 48 How. 382; Crain *v.* Cavana, 36 Barb. 410; 62 Id. 109; Day *v.* West, 2 Edw. Ch. 592.

---

WARREN D. FISHER, Appellant, *v.* THE VILLAGE OF CAMBRIDGE, Respondent.

*Court of Appeals, April 12, 1892.*

1. *Negligence. Bridge.*—Where the trustees of a village build a foot-bridge so near, as in appearance, to make substantially an addition to, and a part of, a highway bridge, without taking precautions to build it strong enough to bear the loads which persons might naturally place upon it in ignorance that it was not a part of what it seemed to be, and that it was designed only for foot passengers, the question, in case of injury under such circumstances, whether the village was not guilty of negligence, is one for the jury.
2. *Same. Violation of village ordinance.*—There must be some natural and reasonable connection, as cause and effect, between the violation of the ordinance and the happening of the accident, before such violation can furnish any defense.

Appeal from judgment of the supreme court, general term, third department, affirming judgment in favor of defendant.

*Charles N. Davison*, for appellant.

*D. M. Westfall*, for respondent.

PECKHAM, J.—Prior to the passage of the act incorporating defendant there had been a bridge spanning the creek which crosses Main street at nearly right angles. Main street runs about east and west. This bridge was erected and kept in repair at the expense and by the authorities of the town, within the limits of which the village was situated. The bridge was in effect a continuation of Main street. In 1866 the defendant was incorporated as a village, and its trustees were made highway commissioners, with general power over sidewalks, roads and foot-bridges, but not over highway bridges. Acting under their authority, the trustees built what is termed a foot-bridge over the same creek. They built it by constructing on each side of this highway bridge another bridge, and each of these bridges which they thus built was about twelve or thirteen feet wide, and almost the same span as the original bridge, which was about twenty-eight feet wide. The space covered by the original highway bridge and by these side bridges was thus about fifty-two or fifty-four feet, and was in effect of the whole width of Main street, including sidewalks. There was in this way added to the original bridge thirteen feet on each side. It is claimed on the part of the village that this addition was plainly a foot-bridge intended solely for the use of foot passengers, and so known to be by the plaintiff. The defendant further contends that it had no power to build any other than a foot-bridge, and that it was not guilty of negligence in building a foot bridge strong enough only for foot passengers. Also, that plaintiff was guilty of negligence which contributed to the injury by driving unnecessarily upon the foot-bridge when he was fully aware of its character.

The creek, which was spanned by the bridge, had a course of about north and south, while the closely settled part of the village lay on the east side of the bridge.

There was evidence in the case tending to show the following facts: Main street had no curb at either side. Instead of a paved gutter there was on the south side of the street and north of the south sidewalk a sort of gutter way, which was a continuation of the street or road. The road rounded gradually, being higher in the center, and the gutter was simply the edge of the road, as it met the plane of the sidewalk on the south and there was no abrupt breaking away. It was perfectly easy for teams to drive across it one way or the other.

Both of these foot-bridges, as has been said, joined and were built up against and substantially formed a part of the old highway bridge.

The south curb line of Main street, if extended across the bridge, would take in about four feet of the north end of the foot-bridge, or, in other words, the foot-bridge projected into the street line about that distance. The balance of the foot-bridge was a continuation of the line of the south sidewalk. The line of demarkation between the so-called foot-bridge and the highway bridge was not distinct. The highway bridge was higher by the thickness of one plank, from one to three inches, than was the foot-bridge. There was nothing else to show where one bridge ended and the other commenced. The general appearance of the whole bridge was that it was safe for general use and for driving with whatever load was necessary. The part the plaintiff drove on was level, or nearly so, with the old bridge; there were plank on both bridges, and nothing on them but dust and dirt. There was nothing to show where the foot-bridge commenced and the road bridge ended, for the line of the difference in height between the two was within the lines of the street. The plaintiff did not know that one part was a foot-bridge only and the other part a road bridge, although he knew that the part designated on the trial as a foot-bridge was the only place that pedestrians usually crossed and that it was built for that purpose, that is, of furnishing

pedestrians a place to cross, but both bridges were on a level and he had never heard that one part of the bridge was stronger than the other part, and from appearances one was just as safe to drive on as the other.

He did know that one part of the bridge was under the supervision of one set of men and the other under the supervision of another set of men. He knew that by seeing different men working on the bridge. During the time plaintiff lived in Cambridge (a period of some years) he had seen other people frequently drive over the foot-bridge part, and it was plain to be seen teams had so driven over it. Tracks of the wagons, marks of the horses and their droppings could be there seen on the planks. These tracks and marks were plain to be seen on the planks at or very near the point where plaintiff went on the bridge. And it was plain that teams had been continually driving over that part.

Upon this evidence we think a case would have been made for the jury if plaintiff had driven along the highway and entered upon the bridge, and had been injured by the falling of the foot-bridge part consequent upon his driving upon that portion. It would be a question for the jury whether the defendant were not guilty of negligence in building its foot-bridge so near as in appearance to make substantially an addition to and a part of the old highway bridge, without taking precautions to build it strong enough to bear the loads which persons might naturally place upon it in ignorance that it was not a part of what it seemed to be and who were equally ignorant that it was designed only for foot passengers. Whether a plaintiff in such case were himself guilty of any negligence if even without absolute necessity he permitted his wagon wheels to drop from the upper plank of the highway bridge the distance of an inch or two to the lower plank of the foot-bridge, and in consequence suffered injury by the falling of the foot-bridge, is a question which could not be determined by the judge in the affirmative. It may be entirely true that defendant had no

legal right to build a highway bridge. Its liability does not flow from the fact of its attempting to build such a bridge and in negligently constructing it. Its liability, if any, rests upon the fact, if it be a fact, that in executing its acknowledged and admitted power to build a foot-bridge, it has built it so close to the highway bridge as seemingly to form a part thereof and in such a manner as was likely to deceive any one ignorant of the fact and lead him to believe that in driving on the foot-bridge he was driving upon a highway-bridge, any part of which would be equal to the burden of sustaining any reasonable load that would be likely to be placed upon it.

The liability of defendant would rest in reality upon the negligent and improper manner in which it actually built a foot-bridge.

The defendant, however, says that the plaintiff drove along the village sidewalk on the south side of Main street, and from such sidewalk entered upon the foot-bridge of defendant with a team of horses drawing a loaded wagon, and while his team was on the foot-bridge the accident occurred. It would not have happened, the defendant says, but for the fact that the plaintiff drove on the village sidewalk, because it was while driving from this sidewalk that he reached the portion of the bridge where the accident occurred. It does not appear that the plaintiff could not have driven over the same portion of the bridge even though he reached the bridge while driving in the highway proper. The defendant now alleges that the plaintiff in driving on the sidewalk from the store to the end of the bridge, a distance of a few feet, violated a village ordinance and also § 652 of the Penal Code.

The village ordinance provided that any person leading or driving any horse or other animal on any of the sidewalks should be liable to a penalty of three dollars for each and every offense. The Penal Code makes it a misdemeanor willfully and without authority to drive along a sidewalk.

It appeared from the evidence that plaintiff was in the employ of merchants who had a store near the bridge, and that he drove on the sidewalk to get his wagon near a platform projecting from the store and from which he loaded his wagon with a stove to be carried somewhere in the village. In driving off the sidewalk it was difficult for plaintiff to do so without at the same time driving his team and wagon on the portion of the bridge built by the defendant for foot passengers, and it was after he had left the sidewalk and was on the defendant's part of the bridge that the accident happened by the giving way of the bridge. From these facts we do not think it follows as a legal proposition that plaintiff was guilty of negligence contributing to the injury.

It has been sometimes held that one who violated some law or regulation intended to prevent the happening of an accident of the nature which in fact occurred was *prima facie* guilty of negligence, and from such violation a reasonable presumption might arise that the fault, if not the sole cause, was at least a contributory cause of the disaster. Thus in Cordell *v.* N. Y. C. & H. R. R. R. Co., 64 N. Y. 535, it was held that a charge that the omission to give the statutory signals at a highway crossing constituted negligence which subjected the defendant to liability for damages if the death of the plaintiff's intestate was caused thereby was correct.

So the non-compliance of a vessel at the time of a collision with statutory or other regulations prescribed by competent authority and intended to prevent collisions, is *prima facie* evidence of negligence, and a presumption that it caused or contributed to the happening of the accident may be permitted to be indulged in.

In this case, however, we think the violation of the ordiance did not within the meaning of the law cause or contribute to the happening of the accident.

In the first place it is entirely clear that the purpose of the ordinance was not to prevent accidents on the foot-bridge. Ordinances of this nature are passed for the purpose of keep-

ing street vehicles within their proper limits and to protect pedestrians and to preserve the sidewalks from exposure to wear and tear from horses or vehicles, for which they were not intended. Although this bridge may be called a foot-bridge and regarded as furnishing in fact a continuation of the sidewalk at that point, yet there can be no doubt that the ordinance as to driving on the sidewalk does not cover within its terms the foot bridge in question. A foot-bridge is not a sidewalk within the general meaning of the word.

Still less would a foot-bridge which to all appearances formed part of a highway bridge, and between which and such highway bridge there was no visible line of demarkation, be regarded as coming within the purview of language providing against the use of sidewalks by horses and carriages.

As the ordinance did not apply to the foot-bridge, there was no violation of it in driving thereon as the plaintiff did, and there was no reasonable connection between the prior violation by driving on the sidewalk and the subsequent injury arising from driving on the foot-bridge. Although the accident happened immediately subsequent to the violation of the ordinance, it was also subsequent to the time when that violation ended. The sidewalk had been driven on, but the plaintiff had also driven off it, and although in driving off the sidewalk the plaintiff had also driven on the foot-bridge, yet they were entirely separable acts and the subsequent was not at all the necessary legal or physical consequent of the first act. The violation of the ordinance would not usually or naturally, and did not proximately cause or tend to cause the injury. If there had been an ordinance providing that every one driving on the highway bridge should keep to the right, would the fact that a person drove to the left at a time when no one else was on or in sight of the bridge be a defense to an action to recover damages sustained by the bridge going down while such person was so driving on the left side of the bridge? There would no natural connection between the violation of the ordinance and the happening of

13

the accident, although it might be in one sense said that if the ordinance had not been violated the accident would not have occurred. The purpose of the ordinance would be regarded, and when it was seen that its purpose was to prevent accidents from collisions and that it assumed the equal safety of both sides of the bridge so far as its ability to sustain a load was concerned, it certainly could not be held that in driving to the left under such circumstances the person was guilty of negligence which contributed to the injury because he thereby violated an ordinance. There must be some natural and reasonable connection, as cause and affect, between the violation of the ordinance and the happening of the accident before such violation can furnish any defense. It cannot be said to contribute to the accident unless the latter is the natural and proximate result following such violation, or unless the violation contributed in some appreciable degree as a part of the proximate cause of the injury. Here the accident was in no sense the proximate result of the violation of the ordinance, nor did its violation contribute or tend to contribute to the happening of the injury as a part of its proximate cause.

If the plaintiff could convince the jury from the evidence in the case that defendant built its foot-bridge in such a way and in such close proximity to the highway bridge as apparently to form a part of that structure and seemingly to be as strong as any portion thereof, and yet negligently omitted to in any way guard it from use as part of such highway bridge, and also negligently omitted to build it strong enough to support the weight which might under such circumstances, reasonably be expected to be placed upon it, he would be entitled to recover his damages provided he satisfied the jury that he was himself ignorant of the fact that the bridge was only a foot-bridge and not intended for the use of horses or vehicles, and there was nothing about the place which would suggest to a reasonably careful and prudent man the existence of any danger from driving on the

bridge in question at the point he did and with the load which plaintiff had.

Evidence upon these questions was given, but the learned judge thought no case for the jury was made out and therefore non-suited the plaintiff.

We think he should have another opportunity to prove his case, and if the evidence then produced should tend to prove the facts above stated, the case should be submitted to the jury. For that purpose this judgment must be reversed and a new trial granted, with costs to abide the event.

All concur.